STANDARD OIL COMPANY OF LOUISIANA *v.* BRODIE.

## Opinion delivered April 10, 1922.

1. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES.—Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.

2. STATUTES—CONSTRUCTION AGAINST ABSURDITY.—Where a statute is susceptible of two constructions, one of which would lead to an absurdity and the other would not, the latter will be adopted.

3. STATUTES—CONSTRUCTION ACCORDING TO INTENT.—In the construction of a statute, the strict literal meaning ought not to prevail where it is opposed to the intention of the Legislature.

4. TAXATION—VALIDITY OF GASOLINE TAX.—Acts 1921, p. 685, providing that persons, firms or corporations who sell gasoline, kerosene or other products to be used in propelling motor vehicles using combustible type engines over the highways of this State, shall collect from such purchaser one cent for each gallon so sold, imposes a tax upon the use of public highways, and is not invalid as imposing a tax on property in violation of the uniformity clause of the State Constitution, though the Legislature, by Acts 1921, p. 490, had previously imposed a privilege tax on automobiles according to their capacity.

5. TAXATION—POWER TO TAX USE OF HIGHWAYS.—Under Const. art. 16, § 5, granting power to the Legislature to tax privileges in such manner as may be deemed proper, the Legislature is authorized to impose a tax for State purposes on the use of the public roads for revenue purposes.

6. CONSTITUTIONAL LAW—DISCRIMINATORY TAX.—Acts 1921, p. 685, § 1-4, providing that persons, firms or corporations selling gasoline, kerosene or other products to be used in propelling motor vehicles using combustible type engines over the highways of the State shall collect from such purchaser one cent for each gallon so sold, is not invalid as being arbitrary, unreasonable and discriminatory in its application in that it does not affect vehicles propelled by steam, electricity or gasoline purchased out of the State.

7. CONSTITUTIONAL LAW—GASOLINE TAX.—Acts 1921, p. 685, §§ 1-4, providing for collection of a tax on gasoline, kerosene and other

products used in propelling motor vehicles, is not invalid as violating the due process clauses of State and Federal Constitutions.

8.   STATUTES—UNCERTAINTY.—Acts 1921, p. 685, §§ 1-4, providing for collection of a tax on gasoline, kerosene and other products used in propelling motor vehicles, is not invalid for uncertainty.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Gus Ottenheimer, Reid, Gray, Burrow & McDonnell,* for appellants.

The act imposes a tax either upon property, the sale thereof or purchase and ownership thereof, and is therefore a tax upon the property itself, and void. 12 Wheaton 419; 197 U. S. 60; 91 U. S. 275; 73 Sou. 193; 23 R. C. L. 36; 41 Sup. Ct. Rep. 272; 72 Sou. 892. The title of the act should be considered in arriving at the intention of the Legislature. 234 S. W. 45; 124 Ark. 475; 138 Ark. 131.

The tax imposed is not a privilege tax. 32 Cyc. 390; 6 Words & Phrases, p. 5586; 23 R. C. L. p. 236. Since the act does not so expressly declare, act 606 cannot be construed as conferring a privilege for the use of the highways of the State. 70 Ark. 554; 36 Cyc. 1179. A statute is not presumed to make any alteration of the common law other than as expressly declared. 115 Ill. App. 31; 23 Ind. 32; 125 Ind. 176; 50 Am. St. Rep. 334; 40 Mo. 253; 55 S. W. 92; 117 Fed. 452; 12 Ky. Law Rep. 839; 13 Ky. Law Rep. 89; 86 N. Y. 8, 49; 57 A. 910; 44 S. E. 760; 80 Ala. 219; 6 Ark. 280; 32 Ark. 59; 47 Ark. 442; 59 Ark. 344; 71 Ark. 556; 59 Ark. 81; 70 Ark. 481. The act being penal must be strictly construed. 6 Ark. 131; 13 Ark. 405; 43 Ark. 413; 59 Ark. 341; 53 Ark. 334; 56 Ark. 45; 38 Ark. 519; 79 Ark. 517; 68 Ark. 34.

The tax construed as a privilege tax is unconstitutional, because violative of art. 2 sec. 18 of the Constitution. 85 Ark. 573; 12 C. J. 117; 70 Ark. 549.

The act violates the due process clauses of the State and Federal Constitutions in that dealers are required to perform services for the State without compensation. 94 Ark. 27; 113 Ark. 149; 91 Fed. 93; 55 Fed. 26.

The act is void for uncertainty.    34 Ark. 224; 45 Ark. 158; 105 Ark. 280; 52 Fed. 917; 39 Cyc. 969; 25 R. C. L. 810; 6 D. C. 75; 59 N. E. 489.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, and *Geo. W. Emerson,* prosecuting attorney, for appellee.

The tax is not a property tax but rather a tax on the use of the highways by certain vehicles using gasoline.

The legislative intention must be inferred from the plain meaning of the words used.    133 Ark. 1; some meaning must be given every word, if possible.    135 Ark. 262; and sections must be read and construed in the light of each other.    131 Ark. 129; 140 Ark. 398. The title of an act is not conclusive of legislative intent. 138 Ark. 381.

The act does not contravene sec. 2, art. 18, Const. because no immunity is granted to any class.    The tax is laid alike on all persons similarly situated, and is a valid act.    70 Ark. 549; 85 Ark. 512.

The due process clause of the Constitution is not violated by the act.    No fundamental rights are infringed. 204 U. S. 241; 74 Ark. 174; 95 U. S. 714; 134 U. S. 232; 113 U. S. 703; 160 U. S. 452; 115 U. S. 321.

The act does not contravene sec. 2, art. 18, Const. be-Constitution of Arkansas.    99 Ark. 1; 49 Ark. 100. The Legislature has power to make such laws as are not prohibited by the Constitution.    112 Ark. 342; 43 Ark. 527; 1 Ark. 513; 4 Ark. 473; 130 U. S. 641; 173 U. S. 592.    Nor does it violate the Fourteenth Amendment to the Constitution of the United States.    113 U. S. 27; 127 U. S. 678; 128 U. S. 82.

McCulloch, C. J.    This litigation calls for an interpretation, and involves the validity, of a statute enacted by the General Assembly of 1921, providing for the collection of a tax upon the sale of "gasoline, kerosene or other products to be used by the purchaser thereof in the propelling of motor vehicles using combustible type engines over the highways."    (Acts 1921, p. 685).    The va-

lidity of the tax is challenged on numerous grounds, which will be discussed in the order presented in the briefs of counsel.

The title of the statute is as follows: "An Act to levy a tax upon gasoline used in the propelling of motor vehicles, and for other purposes."

Section 1 of the statute, which is the one imposing the tax, reads as follows:

"That all persons, firms or corporations who shall sell gasoline, kerosene or other products to be used by the purchaser thereof in the propelling of motor vehicles, using combustible type engines, over the highways of this State, shall collect from such purchaser, in addition to the usual charge therefor, the sum of one cent (1c) per gallon for each gallon so sold."

Section 2 requires all dealers in the sale of gasoline for use in propelling motor vehicles to register with the county clerk of their respective counties and to file a report on or before the tenth day of each month, showing the sales of gasoline, kerosene or other products purchased for use in the propelling of motor vehicles.

Section 3 provides that all dealers who shall sell gasoline or other products upon which the tax is imposed and who shall fail to collect the same "shall be personally liable for the amount of such tax so uncollected," and that such dealers shall pay to the treasurer of the county the sum of one cent per gallon for all gasoline sold for the purposes named.

Section 4 requires all wholesale distributers of gasoline and like products suitable for the use of propelling motor vehicles to file with the county clerk of their respective counties a statement showing the amount of gasoline and other such products sold by them to retailers. A penalty of not less than ten nor more than one thousand dollars is imposed on dealers who shall fail to account for all moneys due by them under the terms of the statute.

Another section provides that of the tax so collected one-half shall be credited to the general road fund of the

county, and the other half shall be transmitted to the treasurer, to be placed to the credit of the highway improvement fund.

It is first contended, in the attack on the validity of the statute, that it constitutes the imposition of a property tax on gasoline and the other commodities mentioned, and that it is void because in violation of the uniformity clause of the Constitution of this State. It is conceded in all quarters that if the imposition is, in effect, a property tax it is void. This calls for an interpretation of the statute for the purpose of determining the character of tax sought to be imposed.

In the outset of the discussion it is well to call attention to certain rules of interpretation for the purpose of determining the constitutionality and validity of a legislative enactment.

The Supreme Court of the United States has said that "the elementary rule is that every reasonable construction must be resorted to in order to save the statute from unconstitutionality." *Hooper v. California,* 155 U. S. 657.

In the recent case of *Dobbs v. Holland,* 140 Ark. 398, we announced the same rule, and we treated it as so familiar in the rules of interpretation of statutes that it was unnecessary to cite authorities in support. We have also said that if a statute is susceptible to two constructions, one of which would lead to an absurdity and the other not, the latter would be adopted. *State* v. *Jones,* 91 Ark. 5. There are many decisions of this court announcing and adhering to those rules and giving them application under a variety of circumstances. *Hartford Fire Ins. Co.* v. *State,* 76 Ark. 303; *Pryor* v. *Murphy,* 80 Ark. 150; *Bowman* v. *State,* 93 Ark. 168; *Garland Power & Dev. Co.* v. *State Board of R. R. Incorporation,* 94 Ark. 422; *Hughes* v. *Kelley,* 95 Ark. 327; *Leonard* v. *State,* 95 Ark. 381; *State* v. *Handlin,* 100 Ark. 175; *Snowden* v. *Thompson,* 106 Ark. 517; *State* v. *Trulock,* 109 Ark. 556.

In the case of *State* v. *Trulock, supra,* we quoted, with approval, the following statement on this subject by Mr. Sutherland:

"The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legislature apparent by the statutes; and if the words are sufficiently flexible to admit of some other construction, it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." 2 Lewis' Sutherland, Statutory Construction, § 376.

When the interpretation of this statute is approached in conformity with the rules thus stated, it is easy to discover in the language an intention on the part of the lawmakers to impose a tax, not on property, but on a privilege, so as to bring the enactment within constitutional limits. The tax is not imposed on the sale or purchase of gasoline, nor on the gasoline itself, nor even on the use of the gasoline. On the contrary, the final and essential element in the imposition of the tax is that the gasoline purchased must be used in propelling a certain kind of vehicle over the public highways. In the final analysis of this language it comes down to the point that the thing which is really taxed is the use of the vehicle of the character described upon the public highway, and the extent of the use is measured by the quantity of fuel consumed, and the tax is imposed according to the extent of the use as thus measured.

If it had been intended merely to tax the gasoline or its use, it would have been wholly unnecessary to describe the character of the use or the place where it was to be used, and the fact that the lawmakers incorporated these elements in laying the bases of the taxation shows unmistakably that it was intended to impose a tax upon the use of the public highways by the method described. It is clear that the tax is not imposed on the seller nor upon the gasoline while in his hands, and this of itself makes it manifest that there was no intention to levy a tax upon the sale of gasoline nor upon the gasoline itself.

"In construing a statute," said this court in *State v. Embrey,* 135 Ark. 262, "some meaning should be given to every word contained therein, if possible." It is our duty, therefore, to give some meaning and effect to that part of the statute which prescribes the use of the gasoline in propelling an automobile along the highway as the final test of the basis of the tax, and especially is it our duty to do this when the constitutionality of the statute depends upon giving some effect to that feature of it.

Counsel for appellants insist that, even if this is not a direct tax on the gasoline itself, it is, at least, a tax on the use of the gasoline, and that this constitutes a tax on the property itself, for the reason that it is a tax on the only available use to which the article is susceptible. In other words, they invoke the rule that has been announced in some quarters, to the effect that a tax levied upon the only available use to which an article is susceptible is, in effect, a tax on the article itself. 26 R. C. L. 236.

It may be conceded that a tax on gasoline for its only available use would, in effect, be a tax on the commodity itself, but such might not be the case as to other articles, and we are unwilling to subscribe unqualifiedly to the doctrine that a tax on the only available use of an article is, in every instance, a tax on the article itself. In fact, this court repudiated the doctrine in the case of *Fort Smith* v. *Scruggs,* 70 Ark. 549, where Judge RIDDICK, speaking for the court, said:

"Counsel say that a tax on the use of an article is a tax on the article itself. While this may be true of a piano, bedstead, or cooking-stove, the use of which involves no injury or detriment to the public or its property, as to wheeled vehicles it is different, for they are made to be used upon roads and streets. The streets belong to the public, and are under the control of the Legislature, whose province it is to enact laws for their improvement and repair. The chief necessity for keeping improved streets is that they may be used for the

passage of wheeled vehicles, and the wear of the streets caused by the passage of such vehicles over them makes necessary constant and expensive repairs.  For this reason, no doubt, the Legislature considered it to be equitable and just that owners of such vehicles should, in addition to the general tax upon their property, pay something for the privilege of using the streets as driveways, the amount paid to go towards keeping the streets in good repair.  This is what the Legislature attempted to do.''

But, as we have already said, this is not a tax on gasoline, but on the use on the public highway of the vehicles mentioned, and the case comes, therefore, within the doctrine announced by Judge RIDDICK in the Scruggs case, *supra,* that the tax on the article used does not constitute a tax on the article itself, for the privilege is not upon the article but upon the use of it on the public highway.  It is, in effect, the use of the public highway that is taxed, and not the use of the article itself.

Among other reasons stated by counsel for appellants in the argument why this statute should not be interpreted as imposing a tax on automobiles used on the public highways, is that such a tax is imposed under another statute, and that a statute amending the former one and increasing the amount of taxes was passed by the Legislature and approved by the Governor only a few days before the enactment of the statute now under consideration.  Acts 1921, p. 490.  This is indeed a circumstance of some value in arriving at the intention of the Legislature, but it is by no means conclusive, for the other statute merely levied a tax on the privilege according to the capacity of the car, whilst the present statute, as now interpreted, imposes a tax on the privilege according to the extent of the use of the car.  It is not unreasonable to suppose that by the former statute the lawmakers intended to impose a minimum privilege tax, laid according to the capacity of the car, and by the statute now under consideration they intended to impose an additional tax according to the extent of the use of the car on the public highway.  It is, at least, our duty

to ascribe to the lawmakers such an intention as is compatible with the Constitution of the State, by which they were bound, and to which, we must presume, they intended to conform.

Our conclusion, therefore, is that, under a fair interpretation of the statute, it imposes, not a property tax, but a tax upon the privilege of using automobiles on the public highway.

The validity of the tax is questioned, even as a privilege tax, on the ground that the Legislature had no power to impose it as a State tax for revenue purposes.

The Constitution provides (sec. 5, art. XVI) "that the General Assembly shall have power from time to time to tax hawkers, peddlers, ferries, exhibitions and privileges in such manner as may be deemed proper." It is contended that this provision of the Constitution is a limitation upon the taxing power of the State for revenue purposes, and that the power to tax is limited to the subjects specifically mentioned—that the use of the word "privileges" must be construed, under the doctrine of *ejusdem generis,* to relate only to the subjects which precede its use. Counsel rely, for this contention, upon the decision of this court in *Washington* v. *State,* 13 Ark. 752, under a provision of the Constitution of 1836 almost identical with the provision on this subject in the present Constitution. We do not think that the case just cited decides what counsel contend that it does. The substance of that decision is that the constitutional provision mentioned is a restriction upon the power of taxation of privileges, and that it does not authorize taxation upon a privilege which was a common right of every citizen.

In the later case of *Baker* v. *State,* 44 Ark. 134, Chief Justice COCKRILL summarizes the effect of the ruling in the Washington case, *supra,* as follows:

"We do not understand this case, reading it all together, to limit the power of legislation for State purposes to the taxation of such privileges as were technically known as such at the common law, notwithstanding an expression to that effect occurs in the opinion. We

think the Legislature is not restrained by anything in the organic law from laying a tax on the franchise of a corporation, and the reasoning of the learned judge who delivered the opinion in Washington's case, *supra*, leads to that conclusion.''

We understand the effect of this decision to be that the restriction is not to the privileges specifically mentioned in the Constitution, nor privileges which were ''technically known as such at the common law,'' but that the restriction relates merely to privileges which were matters of common right.  This being true, there is nothing in the provision of the Constitution referred to which prohibits taxation for State purposes of the use of the public roads.  While the public highways are for the common use of all, they belong to the public, and it is within the power of the Legislature either to regulate or to tax the privilege of using them.  This power was declared in express terms by Judge RIDDICK in the Scruggs case, *supra*.

Again it is argued that the statute, treating it as imposing a privilege tax, is arbitrary and unreasonable in that it discriminates against the users of certain kinds of cars, while exempting from the burden of taxation users of other kinds of cars, and that it also exempts cars propelled by the use of gasoline not purchased in this State.  Illustrations are given of the discriminatory effects of the statute in the fact that it includes only motor vehicles using combustible type engines, whereas there are certain motor cars in use that are propelled, some by electricity and some by steam; also that residents near the borders of the State may conveniently purchase gasoline in a bordering State for use in a car propelled along the highway in this State.

It is true that, under the terms of the statute, a motor car propelled otherwise than by the explosive type of engine escapes the taxation imposed by the statute, and it must also be conceded that evasions of the law in the manner indicated in the argument of counsel are possible,

But this does not render the statute arbitrarily discriminatory in a legal sense.

We have often said that complete uniformity in matters of taxation is unattainable, and it is not essential to the validity of a tax, either upon property or upon privilege, that it be absolutely free from inequalities or discrimination. The lawmakers have some discretion, even in legislating with reference to the power of taxation as restricted by the terms of the Constitution, and they may determine the scope and extent of the exercise of the taxing power, and a mere incidental inequality or discrimination does not affect the validity of the statute.

The Supreme Court of the United States, in the case of *Ozan Lumber Co.* v. *Union County National Bank*, 207 U. S. 251, speaking on a kindred subject, said:

"It is almost impossible, in some matters, to foresee and provide for every imaginable and exceptional case, and a Legislature ought not to be required to do so at the risk of having its legislation declared void, although appropriate and proper upon the general subject upon which such legislation is to act, so long as there is no substantial and fair ground to say that the statute makes an unreasonable and unfounded general classification, and thereby denies to any person the equal protection of the laws. In a classification for govermental purposes there cannot be an *exact* exclusion or inclusion of persons and things."

The same principle has been announced and applied by this court in *Williams* v. *State,* 85 Ark. 464; *St. L. I. M. & S. Ry. Co.* v. *State,* 86 Ark. 518; *St. L. I. M. & S. Ry. Co.* v. *State,* 102 Ark. 205, and *State* v. *Kansas City & Memphis Ry. & Bridge Co.,* 117 Ark. 606.

The fact that there may be evasions of a taxation statute does not affect its validity, for all such statutes are open to evasions. If the general classification is not discriminatory, then mere incidental discriminations or opportunities for evasions do not affect its validity.

It is next contended that the due process clause of the Constitution of this State and of the United States is violated by the requirement laid upon the dealers in gasoline to collect and pay the tax. It must be remembered that the tax is not laid on the sale of the gasoline, nor upon the business of the dealer. The dealer is not required to pay the tax, but to collect it, keep and present an account thereof and pay it over to the county treasurer. The purpose of the statute is two-fold, namely, to impose a tax upon the purchaser of gasoline for the use of the car, and to regulate the business of the dealer by requiring him to collect the tax and pay it over to the county treasurer. It is certainly within the power of the Legislature to regulate the business of selling gasoline, and it is not an unreasonable regulation, for it does not involve the payment of any fee, nor the performance of any unreasonable task.

Counsel base their contention in this respect upon decisions, particularly those of the Supreme Court of the United States, holding that the validity of a regulation requiring the collection of a tax upon corporate stock at the source, that is, through the corporation issuing the stock, is dependent upon the fact that a lien is given to the corporation against the stock in the hands of the holder—in other words, that there must be some mode of reimbursement provided before the duty can be imposed upon a person other than the taxpayer to collect the tax. *Clement National Bank* v. *Vermont,* 231 U. S. 120; *New York* v. *Purdy,* 231 U. S. 373; *First National Bank* v. *Commonwealth,* 9 Wall. 353; *First National Bank* v. *Chehalis County,* 166 U. S. 440; *Citizens' National Bank* v. *Kentucky,* 217 U. S. 443; *National Safety Deposit Co.* v. *Stead,* 232 U. S. 58.

That principle is not ignored in the provisions of the statute now under consideration, for the dealer has ample opportunity to reimburse himself in advance by the collection of the tax before the commodity is delivered. He has the power to compel obedience to the law by refusing to sell the gasoline unless the tax is paid, and the

dealer may adopt reasonable means of ascertaining the real purpose of the purchaser of the article. Of course, there may be evasions, and it cannot always be definitely ascertained what the purpose of the purchaser of the gasoline is, so as to determine whether or not he is attempting to evade the law, but, as before stated, these inherent defects in all such statutes do not affect their validity.

The presumption must be indulged that the vast majority of people who purchase gasoline for use in motor vehicles will obey the law rather than attempt to evade it, and the fact that the few may evade the law does not afford reasons for striking it down. There is scarcely a tax law on the statute books of this or any other State that is not evaded in exceptional instances.

Finally, it is argued that the law is vague and uncertain—so much so that it is incapable of enforcement. The interpretation which we have given to the statute, and which, we think, is a fair and reasonable one, relieves it from this charge of uncertainty, for we think that it means what we have stated in this opinion, and that it can be readily understood.

The fact that there may be a difference of opinion as to the meaning of the language of a statute does not render it too vague or uncertain to be enforceable. It is not infrequent that statutes have to be construed by the courts before laymen, or even lawyers, have a settled view as to the proper interpretation, but a statute which is fairly susceptible to definite interpretation is not too vague for enforcement.

Our conclusion therefore upon the whole case is that the statute is valid, and the decree is therefore affirmed.